Hull, J.
This case comes here on petition in error to reverse the judgment of the court of common pleas. The action was brought to recover damages for personal injuries that were sustained by defendant in error, Joseph Cranker, about *616 February 1, 1895, he being at that time in the employ of ■the plaintiff in error, the defendant below, and it being ■claimed that his injuries were due to and caused by the negligence of Mr, Frolich, the employer. The negligence complained of was, that Frolich was negligent in not furnishing a safe elevator, which it was claimed was being used by Cranker and other employes while performing their duties. It was claimed that the elevator cable was rusted and weak, and that it was not supplied with safety clutches, as it should have been, It appears from the record that upon the day and prior to the time of this accident Frolich was •engaged in the paint, oil and glass business, at Toledo, and that Cranker had been in his employ, in Toledo, for some time prior to that, and on or about January 1, 1895, about a month before the accident, Frolich rented, from A. J. Smith & Co,, for storage purposes, the third floor of the building known as 518 Monroe street, in Toledo, which was situated about opposite Frolich’s place of business. The third floor only was rented,at a rental of $10,00 per month, and Smith & Co. used and occupied the basement. There wa3 a stairway running from the first floor to the third floor, ■and there was also a freight elevator, but no passenger elevator, and, as appears from the pleadings as well as from the record in the case, by the contract between Frolich and Smith <te Co,,Frolich had access to and used along with the building,this elevator for his own purposes and those of his employes, and for the purpose of taking goods up to the third floor. This elevator was operated by means of an engine which was situated in the basement, it being propelled by water, and the machinery and that particular portion of the cable which broke, were in the basement, that part of the building retained by Smith & Co. and not leased to Frolich. The cab or car of the elevator was operated and made to ascend and descend from the basement to the third floor by means of a wire cable which was suspended at the top of the hole or shaft, and one end of the cable was attached to the car and the other to a drum in the basement •of the building, and the machinery was so adjusted that by pulling this cable in either direction it would raise or lower -the car or cab as might be desired. It could be operated ■by a person standing on the floor, i, e., when it was loaded *617 with goods, it might be operated by a man standing on the floor and pulling the cable without going into the elevator, and it could be operated by a man going into the elevator (and that appears to have been the usual way) and pulling the cable.
On the day of the accident, February 1, 1895, Cranker was employed about his duties as a drayman for Frolich, and he brought to this building a load of glass, twenty-four cases, and he and a man named Joseph Higgins put twelve cases of glass, weighing about seven hundred and fifty pounds, into the elevator for the purpose of taking them to the third floor. Cranker and Higgins both entered the car of the elevator, Higgins pulling the cables and operating them and Cranker taking his place somewhere near the middle or at one side of the car, with this glass piled up around and near him. When the elevator had reached nearly the third floor, the evidence is not quite clear just where it was, perhaps a little below the third floor,or perhaps it had gone a little above it, the cable broke in the basement and the car fell. Cranker was carried down with it to the floor of the cellar, and fell and struck there with great force and violence and the glass was thrown upon him and he was seriously injured. Higgins in some way jumped off, or fell off at the second floor and did not go down with the car, and on that account was not hurt, It was for the injuries so sustained that Cranker began his action, about two years after the injury occurred, and for which he was given a verdict and recovered judgment for $500,00, which it is here sought to set aside and reverse.
The defendant pleads,first,that he settled with Cranker — ■ accord and satisfaction; and, further, that Cranker’s duties were only those of a drayman; that he had access to the stairs of the building if it was necessary to go to the third floor, and that he had been instructed to use the stairs and not to use the elevator, and that his duties did not require him to use the elevator at the time of the accident or at any other time; and, further the defendant pleads that he did not have any control over or direction of the engine or cables, or the elevator; that his rights were confined entirely to the third floor; that he was simply permitted to use the elevator by A. J. Smith & Co., from whom he leased the third *618 floor; was simply given access to the elevator to convey his goods to that floor, and that'be, Frolich, had no authority or right to go into the basement for the purpose of examining the elevator machinery or make repairs thereon.
These, in brief, sre the claims of the parties. The chief complaint of the plaintiff in error is, that under the undisputed facts in the case,the defendant below was not liable to Cranker as his employer, for the reason, that under the contract of lease by which he had possession of the third floor, he, Frolich, had no control over the elevator or machinery; that the elevator and machinery were operated by Smith & Co,, and that the eugine was in that part of the building over which Frolich had no control.
The chief defect complained of was, that the engine, in some way, had gotten out of repair, so that it leaked, and the water ran from the engine onto the cable in the cellar and thereby rusted it until it was gradually rotted and weakened, and, for that reason, on the day in question, broke. The testimony of witnesses tended to show that the dropping of water upon such a cable would, in from six months to a year,rust and weaken it in such away that it would be liable to break with an ordinary load upon it.
. It was further claimed by the plaintiff in error, that the defendant in error was himself guilty of contributory negligence in not seeing the defective condition of the elevator, if it was out of repair, and that the danger which he was subjected to in using the elevator was one of the ordinary risKs of his employment that he assumed when he engaged in this employment,if he used the elevator. And the plaintiff in error also relies upon the claim of settlement.
Taking up the last mentioned claim first: It appears from the record that the testimony upon that issue was conflicting; the defendant below, claiming that he paid to Cranker $7.50 per week from the time he was injured until the following July, and then employed him for about two years, and that Cranker agreed to accept the $7.50 per week while he was laid up, and hiB employment thereafter, in full settlement. This is denied by Cranker, who admits the receipt of the money and his subsequent employment, but he testifies positively that he refused to accept that as in full settlement, and refused to sign any writing or agreement to that *619 effect. That question was submitted to the jury, and the jury found against the defendant below, and upon that state of the record,we would not feel warranted in disturbing the verdict upon that ground,
Coming to the other two claims of defendant: Was Frolich occupying the third floor and using this elevator under such terms and conditions that he was not liable to Cranker in case he was injured by reason of a defective condition of the elevator, and was Cranker guilty of contributory negligence? A large number of authorities have been cited in the brief of counsel for plaintiff in error, a very full collection of authorities, bearing upon this question,-and especially upon the liabilities of a landlord for defects in premises which have been leased and the liability of the tenant for defects in the premises, the liability to third parties. There is no dispute as to what the contract was between Frolich and Smith & Go.; it was made by Mr, Blair, who was the foreman of Frolich, and. under this contract, Smith & Co. leased this third floor to Frolich to be used by him in his business and especially for storage, he paying a certain rental therefor,and as a part of the contract’Frolich was to have access to and the use of that elevator. The allegation in the petition, and which is substantially admitted in the answer, is: “In said building there was located a freight elevator to which the said defendant and his employes had access at the first floor thereof for the purpose of conveying the goods and the merchandise of the defendant to the third floor of said building for the purpose of storing the same.”
So far as the liability of landlord and tenant is concerned, the law seems to be well settled that a landlord or owner of property who is not in possession, but of which the tenant has exclusive possession, is not liable to third persons on account of defects in the property, but the liability for such defects rests upon the person in possession, unless there is some contract or arrangement that would vary this liability. And this has been settled and established by at least two or three decisions of the supreme court of this1 state.
It is urged by the plaintiff in error in this case, that Frolich was not in possession of this elevator or of this machin *620 ery; that he had no control over it, and that therefore he is not liable if there was any defect in the cable,
The testimony is somewhat conflicting as to the use that was made of the elevator and the instructions that had been given, if any, by Frolich in regard thereto, Frolich claiming that it was not his intention or purpose to have his employes ride on that elevator; that it was only intended for the conveying of goods and merchandise, and that he had notified his employes, including Cranker, not to ride in tbe elevator. On the other hand, Cranker and other employes testify that no such instructions had been given, and some of the witnesses testify,and Cranker among them, that Frolich himself frequently rode up and down in this elevator; also that Blair, who was the manager of the business, frequently rode up and down in the elevator, and sometimes rode when there were goods in the elevator being conveyed to the third floor; and Cranker testifies that Blair directed him to ride in the elevator. The testimony of Cranker tends to show that the elevator was customarily used by the men in going up and down to and from tbe room on the third floor, and that the stairs were not used to any great extent for that purpose, although they were used sometimes, and we think that under the testimony in the record the jury were warranted in finding that Frolich, either by himself or his manager, Blair, authorized and permitted the use of this elevator by the men when conveying goods from the bottom to the third floor, and, if they believed the testimony of some of the witnesses, they would be authorized in •finding that Blair directed them to ride on the elevator. In the absence of any direction to the contrary, there being no elevator but this one,it would be natural for tbe men to use it in riding up and down, and it would be natural for them to ride in the elevator with goods which were being conveyed. It seems that when a load of glass was taken up usually two men were employed in loading the glass into the elevator and in handling it at the top. The natural way of operating the elevator would be for the man to go inside of it rather than to operate it from the first floor, and, if there had been no instructions to the contrary, it does not appear to us that there would be any negligence in a man getting into the elevator and riding up with a load of glass; that *621 this would be what a man would naturally do, and if he at tempted to ascend by the stairs instead of the elevator, it would cause delay and loss of .time. Some of the men did go upon the stairs. But this whole question was submitted to the jury under th s conflict of testimony, and certainly there was testimony enough offered by the plaintiff below to warrant the jury in finding that Frolich authorized and permitted the use of this elevator for that purpose,and that his managér, Blair, directed the men to use and operate it in .performing these duties; and it may be presumed that they did so find.
And, so finding, were they warranted in returning a verdict against the defendant? The evidence shows that this cable broke not a great ways from the drum in the basement; that it was rusted; that the dripping, of the water upon it had probably caused it to rust and break. There was a cable brought into the court room while the case was being tried below, but it turned out not to be the cable, or, at least, was not sufficiently identified as being the one, and all evidence in regard to that cable was excluded from the jury, Frolich testifies that he never examined this cable; that he made no inspection of it, and Blair, the manager, testifies that he did not. Frolich rented this building about thirty days before the accident. The jury hrve found, or were warranted in finding that his men were directed and authorized to use this elevator in doing their work.
Plaintiff in error, among other cases, cites us to Sinton v. Butler, 40 Ohio St., 158, where a landlord who was entirely out of possession was held not liable for injuries caused by or received in an elevator accident. Mr. Sinton was the owner of the building. There were three buildings and but one elevator engine, and he leased the buildings under a contract stipulating that the lessees should have possession of the premises and keep the same in good order and condition, but this contract was afterwards so modified that Sin-ton was to keep the elevator in repair, pay for such repairs and furnish an engineer to run it, In the syllabus the court say:
“After January, 1874, the only change in conduct was that S. did not call upon the lessees for reimbursement for such repairs, On August 11, 1874, the rope broke. The *622 elevator, with B., hn employe of the lessees upon it, fell, and B. was injured. S. had not been notified that any repairs were needed. The engineer asheoii’ad the machinery had opportunity to see it. The elevator was exclusively operated by the lessees and their employes.
“Held: (1.) S. was not at the time of the accident in possession and in control of the elevator, nor was he conducting or operating it.”
It is not necessary to read any more of the syllabus. The court say, on page 166:
“Prior to 1874, the true meaning of the lease was a renting to the lessees of a building, including an elevator, and also the services of an engineer selected and paid by Sinton. The lessees had entire possession, with the entire duty of using care and diligence to keep the entire leased premises in good order. ”
The court, under this contract, placed the entire duty of keeping the elevator on these premises in repair upon the lessees, upon the ground that Sinton was not in possession of the building and had no right to enter the building at the time, and that therefore Sinton was not liable for the injury to this employe of the lessees. There was in that case no contractual duty resting upon Mr. Sinton as between him and the employe who was injured; the man who" was injured was not in the employ of Sinton. In this case, the man who was injured was in the employ of Mr.Frolich, Between Cranker and Frolich, as master and servant, or employer and employe, certain rights and obligations existed, one of which was that Frolich was bound under the law to use reasonable care in furnishing Cranker a reasonably safe place in which to work and reasonably safe appliances and machinery with which to do his work. It seems to us that this elevator, under the testimony here, might be regarded as and was one of the appliances furnished to Frolich’s employes with which to do their work, and it was one of the places where they did work, and where, according to the testimony of the plaintiff,they were required to work. The principle stated in regard to the duty resting upon the employer, is well established,and it is not necessary to cite authorities. Two sections in Shearman & Bedfield on Negligence, 194 and 194a, state the law generally:
*623 “Section 194, The master personally owes to his servants^tbe^dutyjjof using ordinary care and diligence to provide for their use reasonably safe instrumentalities of service. Among tháse are a reasonably safe place in which to •do their work or to stay while waiting orders, reasonably safe ways of entrance and departure, a<n adequate supply of «ound and safe materials, implements and accommodations, with such other appliances as may reasonably be required to insure their safety while at their work or passing over his premises to or from work.”
It is further urged here that this was one of the assumed risks, one of the ordinary risks, of Granker’s occupation, which he assumed in doing this work in the employ of Mr. Frolich. The case cited by counsel is Van Dusen Gas and Gasoline Engine Co. v. Schelies, 61 Ohio St., 298, where the supreme court seem to have laid down the rule upon that •question. They say, in the first paragraph of the syllabus:
“A servant assumes only such risks incident to his employment as will happen in the ordinarily careful management of the business of the master; such as arise from the fault of the master are not assumed,and the servant may recover for injuries therefrom,unless hiaown fault contributed to the accident. ”
On page 307,at the beginning of the opinion, John Min-shall says:
“It is well settled in the law governing the relation of master and servant, that the latter on entering the employment of the master assumes all risks incident to the employment; in other words, as is sometimes said, the master is not an insurer of the safety of his servant. But this, however, is meant no more than that, the servant assumes all risks incident to the employment, that may happen in the ordinarily careful conduct of the business on the part of the master — injuries that result from the culpable negligence of ■the master are not assumed, and he may recover therefor, unless his own fault contributed to the accident. It therefore follows that the servant can have no relief against his master for injuries resulting from known and obvious dangers, avoidable by ordinary care, however culpable the master may be in the matter. All such injuries, together with ■such as happen where there is no fault on the - part of the *624 master, are,in the ordinary language of the law assumed by the servant.”
Cranker did not assume the risk of injury resulting from' Frolich’s negligence in performing his duty, as an employer, to furnish safe machinery and a safe place to work.
This duty being imposed upon Frolich, were the jury warranted in finding that he failed in the performance of it? Mr. Frolich admits that he did not examine or inspect this cable. His defense here rests upon the ground that the elevator was not in his possession or under his control, It. seems to us that an employer cannot avoid the duty of furnishing a safe place and safe machinery to his emlployes by permitting or requiring them to use machinery or appliance that are or may be to some extent in the possession of or under the control of others. The employe may have no knowledge of the contractual relations that exist between the-employer and the persons from whom he leases the premises. In this case all that Cranker knew was that his employer was using the third floor; that he had the use of this elevator; that he was using it, and that Cranker,according to his testimony, was required to use it in the performance of his duty in conveying goods to the third floor and was ordered by Blair, the foreman,to ride on the elevator when performing this duty, and Mr. Frolich could not avoid this duty and responsibility by the claim that he did not lease the elevator; he could not close his eyes to the condition of theeleavtor or refuse to inspect it, or neglect to inspect it, or to make any examination of it, for the reason that he only leased the third floor and simply had the use of the elevator. It was his duty, before requiring or permitting the men to-use this elevator, to inspect and examine the machinery, to-ascertain by a personal examination, or through agents, what the condition of the machinery was, and if he either knew,or by the exercise of ordinary care might have known, of the defective condition of the elevator,he would be liable for injuries resulting therefrom. We do not think that ordinary care required Cranker, the employe,to go into this basement and inspect and examine this cable. In the absence of any knowledge of its defective condition, he might rely upon his employer performing the duty that the law-imposed upon him. We may conclude from the testimony *625 as to the length of time that it would take this cable to become so rotten that it would break, that at the time Frolich went into possession of these premises the cable was in a defective condition, he having only.been there about a month,, and in such a defective condition that if an inspection and examination of it had been made, this condition would have been readily discovered.
King & Tracy, for Plaintiff in Error.
Southard & Southard, for Defendant in Error,
The case of Wise v. Ackerman, 86 Md., 375, is in point. The court there say, in the second paragraph of the syllabus:
“But an elevator is in many respects a dangerous machine, and though it may be primarily intended only as a freight elevator, yet, if the employes, in the course of their employment, are authorized or directed to use the elevator as a means of transportation, the employer, controlling the operation of the elevator, is required to exercise great care and caution, both in the construction and operation of the machine, so as to render it as free from danger as careful foresight and precaution may reasonably dictate Nothing short of this will excuse the defendant unless it appear that the plaintiff himself, or the person under whom the plaintiff is allowed to claim, was guilty of direct contributory negligence to the production of the disaster.”
We are of the opinion that the judgment of the court of common pleas in this case is sustained by the evidence and that it is not contrary to law; the record shows negligence on the part of Frolich in failing to inspect or examine in any manner this machinery before it was put to this use, and negligence on his part in not supplying his employes with safe machinery and with a safe place to work, and the record does not show any negligence on the part of Cranker contributing to his injury.
-Finding no error in the record, the judgment of the court of common pleas is affirmed.